846 So.2d 529 (2003)
Charles MASON, Appellant,
v.
E. SPEER & ASSOCIATES, INC., a Georgia corporation, n/k/a C.V. Holdings, Inc., Erling Speer, individually, and E. Speer & Associates, Inc., a Florida corporation, Appellees.
No. 4D01-3122.
District Court of Appeal of Florida, Fourth District.
February 5, 2003.
Rehearing Denied March 28, 2003.
*530 Steven M. Goldsmith of Steven M. Goldsmith, P.A., Boca Raton, and Leif J. Grazi of Grazi & Gianino, Stuart, for appellant.
Edward A. Marod of Edward A. Marod, P.A., West Palm Beach, for appellees.
HAZOURI, J.
This is an appeal from a final judgment entered in case numbers 91-42, 98-549, and 98-561 (consolidated for trial) finding in favor of Charles Mason and holding Erling Speer personally liable for $72,950.88. We remand for the entry of two separate final judgments, one in case number 98-549 and the other in case numbers 91-42 and 98-561.
Charles Mason (Mason) was employed by E. Speer & Associates, Inc., a Georgia corporation (ESA Georgia) for approximately ten years when his employment with the company ended in 1991. Mason filed suit against ESA Georgia seeking to recover compensation allegedly owed to him under a profit participation plan. (Case No. 91-42). In November 1996, Mason obtained a judgment against ESA Georgia. However, before Mason could *531 collect on this judgment, ESA Georgia declared bankruptcy.[1]
In September 1998, Mason filed an Impleader Complaint against Erling Speer (Speer). Speer was the 100% shareholder and managing agent of ESA Georgia. Mason alleged that due to ESA Georgia's fraudulent conduct, as perpetrated by Speer, Mason was entitled to apply his unsatisfied judgment against property improperly and fraudulently transferred to Speer.
Also in 1998, Mason purchased the claims of the bankruptcy trustee of ESA Georgia[2] at an auction. These claims included all potential claims ESA Georgia had against Speer for fraudulent transfers. As assignee of the trustee in bankruptcy, Mason filed a complaint against Speer alleging that Speer misappropriated and mishandled assets of ESA Georgia. (Case No. 98-549). A summary judgment was entered determining that all claims of Mason, as the assignee of the trustee, that pre-dated June 17, 1992, were barred by the statute of limitations.
In July 1998, Mason filed a separate action referred to as a "Creditors Bill" against Speer seeking to hold Speer liable for Mason's unsatisfied judgment against ESA Georgia on the grounds that Speer had mishandled and misappropriated assets of ESA Georgia. (Case No. 98-561).
Mason subsequently amended his pleadings in all three cases to add E. Speer & Associates, Inc., a Florida corporation (ESA Florida). This was a corporation that Speer had set up in November 1996, right before ESA Georgia declared bankruptcy. Similar to ESA Georgia, Speer was the 100% shareholder and controlling agent of ESA Florida. Mason sought to hold ESA Florida liable for his unsatisfied judgment against ESA Georgia under a mere continuation of business theory.
All three of these cases were consolidated for trial. At trial, Mason presented evidence on twenty-five transactions that he alleged were inappropriate, improper and fraudulent. Mason, as assignee of the trustee, sought to recover from Speer monies that Speer had fraudulently transferred from ESA Georgia to Speer's personal benefit. Mason, as a creditor of ESA Georgia, alleged that Speer should be held liable for Mason's unsatisfied judgment against ESA Georgia based on the legal construct of piercing the corporate veil. In addition, Mason, as a creditor of ESA Georgia, alleged that ESA Florida should be held liable for Mason's unsatisfied judgment against ESA Georgia on a mere continuation of business theory. The trial court made findings of fact on six transactions that it deemed to be improper and/or fraudulent. The trial court entered a Final Judgment as to all three case numbers in favor of Mason and finding Speer personally liable for the amount of $72,950.88. In addition, the trial court entered a Judgment Awarding Option which awarded Mason the assignment of an option to lease space. At the time of trial, Speer individually owned the option. On Mason's claim against ESA Florida, the trial court found that ESA Florida was not liable for Mason's unsatisfied judgment against ESA Georgia.
On appeal, Mason argues: 1) the trial court erred in finding that ESA Florida was not a mere continuation of ESA Georgia, 2) the trial court erred by not piercing the corporate veil and holding Speer personally liable for Mason's unsatisfied judgment against ESA Georgia, 3) Mason, as *532 assignee of the trustee, was entitled to "avoid" under 11 U.S.C. section 548(a)(1) the transfers of two management contracts that ESA Georgia had allegedly transferred to ESA Florida, and 4) the trial court erred in failing to enter separate judgments for Mason, as creditor, and Mason, as assignee of the trustee.
Speer cross appeals and argues: 1) the trial court erred in granting any relief to Mason other than as assignee of the trustee; 2) the trial court erred in failing to enforce its summary judgment order in case no. 98-549; 3) the trial court erred in awarding damages based on three of the transactions; and 4) the trial court erred in awarding Mason the option to lease space.
On the main appeal, there is merit only in Mason's fourth argument. However, we address the first three briefly. First, Mason alleged that ESA Florida should be held liable for Mason's unsatisfied judgment against ESA Georgia under a mere continuation of business theory. Under that theory, ESA Florida would be liable if it is found to be merely a continuation or reincarnation of ESA Georgia, simply under a different name. See Munim, M.D. v. Azar, M.D., 648 So.2d 145, 154 (Fla. 4th DCA 1994).
In Munim, the litigation arose from the breakup of the professional employment relationship between the parties. Id. at 148. As a result of the litigation, Dr. Azar was granted a judgment against Munim, P.A., his former employer. Twelve days after the entry of the judgment, Dr. Munim, the sole shareholder and managing agent of Munim, P.A., incorporated "Pulmonary Associates" a new medical practice. Id. at 150. Within six weeks of the entry of the judgment, Munim P.A. stopped seeing patients and rendering medical services. Pulmonary Associates commenced seeing patients and rendering medical services the very next day. Id. at 151. Dr. Munim was the sole shareholder of both associations. They were both located in the same office and had the same furniture, medical apparatus, office equipment, and personnel. The medical records and patient files were left in place for use by Pulmonary Associates. This court held:
For all intents and purposes, the new P.A. is the old P.A. dressed up with a new name and controlled by the same individual. We agree with the trial court that Pulmonary Associates is a mere continuation of the business of Munim, P.A. because it has the `same management, personnel, assets, location and stockholder' as that of Munim, P.A.
Id. at 154.
Mason argues that under Munim, ESA Florida should be considered a mere continuation of ESA Georgia because both companies were wholly owned by Speer, both provided the same real estate management services to clients, Speer opened ESA Florida only days after Mason obtained a judgment against ESA Georgia, and ESA Florida used the same office, telephone, stationery and part time personnel that ESA Georgia had used. While all of these facts are essentially undisputed, the instant case is distinguishable from Munim based on the "assets" that ESA Georgia allegedly transferred to ESA Florida.
In the instant case, Mason alleged that ESA Georgia transferred two income producing management contracts to ESA Florida. The first contract was with Wintergreen. This was an agreement entered into by ESA Georgia and Wintergreen whereby ESA Georgia agreed to provide management services to Wintergreen from June 1, 1996 through December 1, 1996. This contract was completed and ended by *533 its own terms on December 1, 1996. In January 1997, Wintergreen entered into a new contract with ESA Florida.[3]
The second contract that Mason alleges was transferred was an agreement between Speer and Atlantic Gulf. This agreement provided for the personal services of Speer and a business associate (not affiliated with ESA Georgia). ESA Georgia was not a party to the agreement. However, Speer used ESA Georgia as the invoicing and billing company for the contract. ESA Georgia received the payments and then distributed them equally to Speer and the other business associate.
The contract with Wintergreen ended on its own terms and therefore was not an asset of ESA Georgia that could be transferred to ESA Florida. As for the agreement with Atlantic Gulf, ESA Georgia was never a party to the agreement and did not have rights in the agreement that could be transferred. In addition, both of the agreements in the instant case were personal service contracts that required performance by Speer.
The instant case is also distinguishable from Munim, in that ESA Georgia declared bankruptcy and transferred all of its remaining assets (a villa and some cash) to the bankruptcy estate. In addition, there was no real transfer of personnel or equipment from ESA Georgia to ESA Florida. When ESA Georgia declared bankruptcy, Speer was the only remaining employee. For the first two years of ESA Florida's existence Speer was the only salaried employee. The only connection between the companies was Speer. As for equipment, neither corporation had any real identifiable equipment. The nature of the services performed did not require any specific equipment or other assets. In incorporating ESA Florida, Speer set up a new corporate existence through which to provide his services. Based on his reputation, he was able to gain clients for ESA Florida that had previously been clients of ESA Georgia. We note that the circumstances of the instant case are analogous to the hypothetical situation we described in footnote 4 of Munim:
Dr. Munim claims the effect of the trial court's order is a form of personal indentured servitude. We do not agree with this harsh characterization. Nothing in this opinion would prevent a judgment debtor from properly dissolving his professional association in compliance with sections 607.1402-1406, Florida Statutes (1993) and thereafter either retiring from practice or joining another professional association as an employee.
Munim, 648 So.2d at 155 n. 4.
Speer took the proper steps to dissolve ESA Georgia through bankruptcy and he is not prevented from incorporating ESA Florida as a means through which to provide his consulting services. Therefore, we affirm the trial court's finding and hold that ESA Florida is not liable for Mason's unsatisfied judgment against ESA Georgia.
As for Mason's second argument that the trial court erred in not piercing the corporate veil and holding Speer personally liable for Mason's unsatisfied judgment against ESA Georgia, we agree with the trial court. In Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla.1984), the Florida Supreme Court established the standard to be applied in a piercing the corporate veil claim. The Court held that in order to pierce the corporate veil, a plaintiff is required to prove both that the *534 corporation is a mere instrumentality or alter ego of the defendant and that the defendant engaged in "improper conduct." Id. at 1120-21. The Court reasoned that the corporate veil should not be pierced unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud on them.
In the instant case there is sufficient evidence that Speer improperly converted corporate property to his own use on more than one occasion. The trial court made findings of fact regarding six transactions that it deemed to be improper. These transactions can serve as evidence that Speer engaged in misconduct. However, Mason must prove that these transactions were done with a deliberate intent to mislead creditors. The trial court found that Mason had not satisfied this burden. Of the transactions that the trial court deemed to be improper, they were spread over a period of five years with two in 1991, two in 1994 and two in 1996. The transactions were isolated incidents and were not in response to any liability that the corporation had incurred. Mason simply did not carry his burden in establishing that these transactions were made with a deliberate intent to mislead creditors.
Mason's third argument is made as assignee of the trustee of the bankruptcy estate. Mason seeks to avoid the alleged transfers in December 1996 by ESA Georgia of its management contracts with Wintergreen and Atlantic Gulf to ESA Florida. Under federal law, 11 U.S.C. § 548(a)(1) provides that a trustee may avoid any transfer of an interest of the debtor in property if the transfer meets certain criteria. Under the bankruptcy code, the concept of property of a debtor's estate is an expansive one and includes all legal or equitable interests of a debtor in property as of the commencement of the case, wherever located and by whomever held. See In re Sheppard's Dental Ctrs., Inc., 65 B.R. 274, 277 (Bankr.S.D.Fla. 1986). Despite this expansive definition, ESA Georgia did not have a sufficient interest in the management contracts with Wintergreen and Atlantic Gulf that could be transferred to ESA Florida. The contract with Wintergreen expired by its own terms on December 1, 1996 and was not renewed. Therefore, after December 1, 1996, ESA Georgia no longer had an interest in the contract. As for Atlantic Gulf, the trial court determined that the relationship was an agreement with Speer personally and not a true asset of ESA Georgia.[4]
We do find merit in Mason's fourth argument that the trial court erred in failing to enter separate judgments for Mason, individually, and for Mason, as assignee of the trustee of the bankruptcy estate. This case involves three separate actions that were consolidated for trial. Two of the actions were brought by Mason seeking to satisfy the judgment he obtained against ESA Georgia in November 1996 and one was brought by Mason, as assignee of the trustee. Any recovery that Mason received as creditor would go to satisfy his judgment against ESA Georgia. Any recovery that he received as assignee of the trustee would be recovery on behalf of the estate whose rights he purchased.
*535 These are essentially different parties who have separate causes of action that seek different relief based on different standards of evidence.
The trial court found Speer liable for $72,950.88 based on improper and/or fraudulent transactions whereby Speer profited at the expense of ESA Georgia and its creditors. Once ESA Georgia went into bankruptcy, the right to recover for fraudulent transactions belonged to the bankruptcy estate. The trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders of the estate. Allowing individual creditors to pursue fraudulent conveyance actions to obtain possession of property of the estate goes against the fundamental policy of equitable distribution. See In re Ross, 10 Fla. L. Weekly B 239 (Bankr. M.D.Fla.1997). Mason, as assignee of the trustee, was the only party who had standing to bring a cause of action against Speer to recover amounts of money Speer misappropriated from ESA Georgia. Therefore, the recovery awarded in the Final Judgment was to Mason, as assignee of the trustee.
Mason, as an individual creditor, had standing to bring causes of action under a mere continuation of business theory and under a piercing the corporate veil claim. See Seminole Boatyard, Inc. v. Christoph, 715 So.2d 987 (Fla. 4th DCA 1998) (holding that a bankruptcy trustee has no authority to assert general causes of action, such as alter ego claims, on behalf of bankrupt estate's creditors). The trial court did not grant relief on either of these claims. If the trial court had granted relief based on either of Mason's claims as creditor, a final judgment should have been entered finding that either ESA Florida or Speer was personally liable for any unsatisfied portion of Mason's judgment against ESA Georgia.
The only relief granted in the Final Judgment was to Mason, as assignee of the trustee. Therefore, we reverse and remand for the entry of two separate final judgments: One in case no. 98-549 holding Speer liable for: $36,000 profit as a result of the fraudulent purchase of lot X14, $1,500 of Grove Hill Plantation payments that were personal expenditures and were paid improperly by the corporation, and $7,500 of the November 1996 payment from Atlantic Gulf Communities to ESA Florida.[5] The other final judgment is to be entered in case nos. 91-42 and 98-561 finding for Speer and awarding Mason no recovery. Mason concedes that case nos. 91-42 and 98-561 were duplicative and therefore only one final judgment is necessary. Even though Mason was not granted relief as a creditor, he can still seek to satisfy his judgment against ESA Georgia through the bankruptcy estate.
With respect to Speer's first point on cross appeal, that the trial court erred in granting any relief to Mason other than as assignee of the trustee, we agree. For the reasons discussed above, the trial court erred in including case nos. 91-42 and 98-561 in the Final Judgment. The recovery that the trial court awarded was to Mason, as assignee of the trustee, because that was the only party that had standing to pursue recovery on fraudulent transactions. Therefore, the Final Judgment should have been entered only as to case *536 no. 98-549 with the recovery going solely to Mason, as assignee of the trustee. As stated above, we remand for entry of two separate final judgments: A judgment for case no. 98-549 awarding Mason recovery against Speer and a judgment in case nos. 91-42 and 98-561 finding for Speer and awarding Mason no recovery.
We also agree with Speer's second contention, that the trial court erred in failing to enforce the summary judgment order that was entered prior to trial in case no. 98-549. The summary judgment order determined that all claims of the trustee for transactions dated earlier than June 17, 1992, were barred by the statute of limitations. Although a trial court has the inherent authority to reconsider a non-final order and modify or retract it, the trial court in the instant case never gave any indication that it was going to reconsider the summary judgment order and never modified or retracted the order. See Precision Tune Auto Care, Inc. v. Radcliff, 731 So.2d 744 (Fla. 4th DCA 1999). In addition, the record indicates that Mason recognized the existence of the order at trial and argued to the trial court as follows:
Admittedly, we cannot on the trustee, given Your Honor's ruling on summary judgment motion, we can't come in and suggest that we would be able to recover damages for a transaction prior to the June 1992 ruling that Your Honor made limiting the date of the first claim that we could make. As a creditor, however we are entitled and we are able to show prepre-1992 transactions showing a complete disregard of the corporate identity in order to establish alter ego.
Therefore, any evidence that was submitted during trial with respect to transactions prior to June 17, 1992, was submitted solely as evidence under Mason's piercing the corporate veil claim. Since the trial court did not grant Mason any recovery on this basis, it was error for the trial court to award Mason any recovery in the final judgment based on transactions barred by the summary judgment order. On remand, the Final Judgment in case no. 98-549, is to be reduced by the $21,840.88 of Speer's December 31, 1991, divorce fees that the trial court found were a personal debt and were improperly paid by the corporation and the interest of $6,110 on Speer's unsecured loan that the trial court found was paid improperly to First National Bank on February 13, 1991.
Speer also argues that the trial court improperly granted relief on the sale of a lot (referred to as X14) that the trial court deemed to be fraudulent and for inadequate value, and resulted in profit to Speer of $36,000. Speer purchased the lot from Mariner Sands Associates, a related corporation, in December 1993, for $99,000. He sold it five months later for $152,500. Speer testified that the reason he purchased the lot was because Mariner Sands was trying to close at the end of 1993. ESA Georgia owned 99% of Mariner Sands Associates. Mikel Spraker, a CPA, testified at trial that normally when a partnership wants to get rid of all of its assets, it liquidates them and each partner takes their pro rata share. Therefore, he testified that ESA Georgia should have ended up with 99% of the lot and should have been the one to sell the lot and make the $53,000 profit.
Speer testified that when he bought the lot, it was his opinion that it was worth what he paid for it. He argues that the trial court erred in admitting the sales price in May 1994 as evidence of the value of the lot in December 1993 when he purchased it from Mariner Sands Associates. He contends that evidence of the sale price is not competent substantial evidence of the value of the property on the date of *537 the challenged transaction (his purchase in December) because he testified that the property had been improved between the acquisition and sale date. Speer relies on Culbertson v. State Road Dep't, 165 So.2d 255 (Fla. 1st DCA 1964). In Culbertson, the first district held that an appraisal made four months prior to a taking was too remote to serve as a competent basis for the challenged testimony. Id. at 257. However, the first district also stated that the court must consider whether or not the evidence "fairly permits the inference that there was no change affecting value between the date of the appraisal and the date of the taking." Id.
The eleventh circuit distinguished Culbertson in Gilchrist Timber Co. v. ITT Rayonier, Inc., 127 F.3d 1390 (11th Cir. 1997). The eleventh circuit reasoned that Culbertson addressed whether the evidence permitted an inference that the value had not changed between the time of the appraisal and the date of the taking. Id. at 1396. Culbertson did not establish a hard and fast rule on when an appraisal is too remote to be admissible. In the instant case, although Speer testified that he "did some work to clean up the lot and try to package it up so it could be sold," he did not enter into evidence any approximate costs or additional evidence relating to the work that he allegedly performed. Without any evidence, the trial court was free to infer that the increase in the value of the property was not due to outside factors, but instead indicated the true value of the property at the time Speer purchased it. Therefore, the trial court did not err in admitting evidence of the May 1994 sale price and we affirm the trial court's award of $36,000 based on the sale of lot X14.
Speer's final argument on cross appeal related to the option to lease a parcel of real estate that the trial court awarded to Mason in the Judgment Awarding Option. Speer received this option in 1994 as part of a settlement agreement between Speer, ESA Georgia, Willoughby Development, Inc., another corporation wholly owned by Speer, Willoughby Associates and Radnor/Willoughby Corporation. Pursuant to the agreement, ESA Georgia received the release of a guarantee of a liability and Speer, individually, was granted an option to lease space in the Willoughby Golf Club, Inc., clubhouse. The trial court made findings of fact that the option was a corporate asset of Willoughby Development, Inc., and that Speer should have negotiated for the asset on behalf of ESA Georgia.
Speer argues that the trial court erred because the asset was never property of ESA Georgia and therefore its transfer to Speer could not have been a fraudulent transfer under section 726.102(12), Florida Statutes, or 11 U.S.C. § 548 which permits avoidance of transfers of an interest of the debtor in property. We agree. Mason contends that under the doctrine of piercing the corporate veil even though Speer held the option personally, it should be subject to Mason's unsatisfied judgment against ESA Georgia. However, the trial court rejected Mason's piercing the corporate veil claim and we affirm the trial court's findings on that issue. Therefore, Mason is not able to reach individual assets of Speer in an attempt to satisfy his judgment against ESA Georgia. Mason also argues that the parties entered into a settlement agreement prior to trial in which Speer agreed to transfer the option to Mason. However, this issue was not addressed by the trial court and therefore cannot be the basis for the Judgment Awarding Option. There is no proper basis in the record to support this judgment. Therefore, we reverse the Judgment Awarding Option.
*538 REVERSED AND REMANDED for proceedings consistent with this opinion.
TAYLOR and MAY, JJ., concur.
NOTES
[1] In November 1996, ESA Georgia changed its name to C.V. Holdings, Inc. It did not declare bankruptcy until April 1997.
[2] Now known as C.V. Holdings, Inc.
[3] ESA Florida had been incorporated by Speer in November 1996. The contract with ESA Florida was entered into on January 1, 1997, but made retroactive to December 1, 1996.
[4] Although this issue was also addressed in Mason's first claim that ESA Florida should be viewed as a mere continuation of ESA Georgia, this claim is distinguishable because in Mason's first claim he was seeking recovery as a creditor. In this claim, he is seeking recovery as the assignee of the trustee of the bankruptcy estate under 11 U.S.C. § 548 which has a broad definition of "interest in property.'' Any recovery that Mason were to receive on this issue would be recovery on behalf of the bankruptcy estate, the rights to which he purchased at auction.
[5] In the Final Judgment After Rehearing, the trial court held Speer personally liable on two other transactions: Interest of $6,100 on Speer's unsecured loan that was paid improperly by the corporation and $21,840.88 of divorce fees that were a personal debt of Speer and were improperly paid by the corporation. However, as addressed later in this opinion, recovery on both of these transactions is barred by a summary judgment order entered in case no. 98-549.