989 So.2d 38 (2008)
Renee BRASWELL, Appellant,
v.
RYAN INVESTMENTS, LTD., Appellee.
No. 3D06-2827.
District Court of Appeal of Florida, Third District.
July 9, 2008.
Rehearing Denied August 21, 2008.
Shook, Hardy & Bacon and Humberto H. Ocariz and Rebecca A. Ocariz and Daniel B. Rogers, Miami, for appellant.
Herron Jacobs Ortiz and Andrew R. Herron and Jose A. Ortiz and Ryan C. Zagare, Miami, for appellee.
Before RAMIREZ and SALTER, JJ., and SCHWARTZ, Senior Judge.
SCHWARTZ, Senior Judge.
This case involves a separate aspect of the judgment considered in Goldstein v. Braswell, 987 So.2d 123 (Fla. 3d DCA 2008). Mrs. Braswell is the holder of approximately $24 million in judgments against her now-deceased former husband based on his failure to make payments required by and under a March 2000 marital settlement agreement. See Braswell v. Braswell, 881 So.2d 1193 (Fla. 3d DCA 2004). Although their marital home had been titled in the name of Ryan Investments, Ltd., since it was purchased in 1997, she sought to execute upon it on the ground that Ryan Investments was Mr. Braswell's alter ego and that he had put the property in Ryan Investments' name as a means of defrauding her. She thus invoked the so-called "outsider reverse corporate piercing" theory recognized in Estudios, Proyectos e Inversiones de Centro America, S.A. (EPICA) v. Swiss Bank Corp. (Overseas) S.A., 507 So.2d 1119 (Fla. 3d DCA 1987), review denied, 518 So.2d 1274 (Fla.1987):
A corporation's veil will be pierced where the corporation's controlling shareholder formed or used the corporation to defraud creditors by evading liability for preexisting obligations. The *39 usual result of piercing the corporate veil is that the controlling shareholder or shareholders become liable for the corporate liabilities. The remedy is equally available, however, to hold the corporation liable for the debts of controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability.
Id. at 1120 (citations omitted); see also Sweeney, Cohn, Stahl & Vaccaro v. Kane, 6 A.D.3d 72, 773 N.Y.S.2d 420 (2004), leave to appeal dismissed, 3 N.Y.3d 751, 788 N.Y.S.2d 661, 821 N.E.2d 965 (2004) (applying Florida law); contra Postal Instant Press, Inc. v. Kaswa Corporation, 162 Cal. App.4th 1510, 77 Cal.Rptr.3d 96 (2008); see generally 2 A.L.R.6th 195. She now appeals from a judgment entered against her after a bench trial.
We affirm because (a) the remedy invoked is available only, as Estudios, 507 So.2d at 1120, says, "where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability," (emphasis added); and (b) that the emphasized condition was not satisfied in this case.[1]
There is no question that the act of taking title in the corporate name well preceded the existence of the claims and obligations sued upon rather than vice versa. As the trial court correctly held:
Even more importantly, Renee Braswell did not, and simply cannot argue that Glenn Braswell used Ryan to "secrete" the La Brisas property [the former marital home] from her "pre-existing debts" (which did not exist) as is required by the Estudios case. It is undisputed that title to the La Brisas property was placed in Ryan from inception in 1997, years before the divorce case was commenced or Renee Braswell's claims against Glenn Braswell arose. Whether or not Renee Braswell knew how her marital home was titled at the time, it is indisputable that Ryan took title in 1997, years before Renee Braswell's claims arose. This is not a situation in which Glenn Braswell transferred title of Las Brisas to Ryan after Renee Braswell's claims arose or even when the winds of divorce were blowing, as required in Estudios for reverse piercing.
The failure to establish, in fact, the impossibility of establishing that the use of the corporate form was to prevent execution on a liability which did not then exist is fatal to Mrs. Braswell's claim. See Mason v. E. Speer & Assocs., Inc., 846 So.2d 529, 534 (Fla. 4th DCA 2003) (holding that judgment holder did not prove that 100 per cent shareholder's improper transactions, which "were not in response to any liability that the corporation had incurred,... were made with a deliberate attempt to mislead creditors"), review denied, 857 So.2d 196 (Fla.2003); Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F.Supp.2d 1350, 1361 (M.D.Fla.2007) (holding that the allegations were insufficient because there was "no evidence that [controlling shareholder] used [the corporation] to defraud existing personal or corporate creditors, by transferring funds into or out of the corporation") (applying Florida law); see also Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1118 (Fla. 1984) ("When the conception of corporate entity is employed to defraud creditors, to evade an existing obligation, to circumvent a statute, to achieve or perpetuate monopoly, or to protect knavery or crime, the *40 courts will draw aside the web of entity... and will do real justice between real persons." (quoting Barnes v. Liebig, 146 Fla. 219, 238, 1 So.2d 247, 254 (1941))); Select Creations, Inc. v. Paliafito Am., Inc., 852 F.Supp. 740, 774 (E.D.Wis.1994) ("It is particularly appropriate to apply the alter ego doctrine [to pierce the corporate veil] in `reverse' when the controlling party uses the controlled entity to hide assets... to avoid the pre-existing liability of the controlling party."). See generally 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 41.34, 41.70 (rev. 2006).
This conclusion, which is nothing more than an aspect of the general rule that the allegedly improper transaction may be relied upon only when it has caused cognizable damage to the creditors, see Gasparini v. Pordomingo, 972 So.2d 1053, 1055 (Fla. 3d DCA 2008); Priskie v. Missry, 958 So.2d 613, 614-15 (Fla. 4th DCA 2007); Seminole Boatyard, Inc. v. Christoph, 715 So.2d 987, 990 (Fla. 4th DCA 1998), review denied, 727 So.2d 903 (Fla.1998), is a firmly established one. See Estudios, 507 So.2d at 1121 (holding that trial court correctly denied motion to dissolve prejudgment writ of attachment where individual guarantor "created [the corporation] and transferred his ownership of the farm to [the corporation] to secrete his personal assets and thereby defraud his creditors"); Kane, 773 N.Y.S.2d at 425 (holding that requisites for reverse piercing were satisfied under Estudios; "when the Kanes contracted to buy [their home], they were trying to accomplish the avoidance of Amy Kane's [debtor] obligations to the [judgment creditors] by acquiring the property through a Florida corporation"); Sea-Land Servs., Inc. v. Pepper Source, 993 F.2d 1309, 1313 (7th Cir.1993) (holding that evidence supported reverse corporate piercing where creditor established nexus between its loss and debtor's intentional and improper financial maneuvering, which caused its inability to collect the default judgment); Litchfield Asset Mgmt. Corp. v. Howell, 70 Conn.App. 133, 799 A.2d 298, 314-15 (2002) (holding that transfer of funds to corporation proximately caused loss where individual debtor knew that plaintiff was pursuing a claim against her and thereby prevented plaintiff from securing collection of the judgment), cert. denied, 261 Conn. 911, 806 A.2d 49 (2002); Olen v. Phelps, 200 Wis.2d 155, 163-64, 546 N.W.2d 176 (1996) (affirming application of reverse alter ego claim where defendant "fraudulently conveyed building title to frustrate collection proceedings and manipulated corporate assets to avoid his own preexisting liabilities"), review denied, 201 Wis.2d 436, 549 N.W.2d 732 (1996). The principle's clear application alone requires affirmance in this case.
Looking at the "piercing the veil" doctrines from a broader perspective which may serve to resolve the narrower problem with which we are now concerned, it seems to us that the rule is, perhaps sub silentio, based on the idea that when one enters into an agreement with another entity, whether individual or corporate, which calls for future performance, it is in presumed reliance on the ability to look to all of that party's existing assets to satisfy any damage caused by his failure to perform and to require this reliance. The direct and reverse piercing doctrines are respectively designed to prevent a fraudulent breach of that understanding which occurs when a contracting individual later fraudulently transfers his assets to a controlled corporation or a contracting corporation does so to a controlling individual. Obviously the considerations do not exist when the contracting party (in this case Mr. Braswell) did not have title to the asset in question (Ryan Investments did) when he made the promises sued upon.
*41 This observation applies with even greater force to this particular set of facts. Not only did Ryan Investments own the home well prior to the dissolution, but that Mrs. Braswell knew this was the case, is shown by the fact that she made Ryan Investments a party defendant in the dissolution action precisely in order to reach it as a "marital asset." Moreover, in the settlement agreement she gave up any interest in the home,[2] however titled, in return for, among other considerations, the promise to pay her large sums, the breach of which gave rise to the judgments she is now attempting to satisfy. Thus, Mr. Braswell's allegedly improper transfer of the home to Ryan Investments, not only preceded his promise, Mrs. Braswell's rights to the home were actually given, at least in part, in exchange for the later promises. Bearing in mind that all corporate piercing is based on equitable principles, see Barineau v. Barineau, 662 So.2d 1008, 1009 (Fla. 1st DCA 1995), it would be highly inequitable now, in effect, to give her the home through other means.
Mrs. Braswell correctly states that, under Estudios, it does not matter that the corporation itself was formed, as here, prior to, rather than at the time of its alleged improper use. See Dania Jai-Alai Palace, Inc., 450 So.2d at 1120-21. This contention, however, addresses nothing but straw because, notwithstanding to her representations, the trial court made no ruling to the contrary. Neither do we.
Finally, there is nothing in the statement of the rule or any authority, to support the strange proposition for which Mrs. Braswell argues, that the improper use of the corporation need only "preexist" the subsequent attempt, as here, to reach the secreted asset, no matter how many years subsequent or how unrelated to that misconduct.
Affirmed.[3]
NOTES
[1] It is unnecessary to determine whether the other elements of the corporate piercing doctrine were present.
[2] Indeed, the agreement required Mrs. Braswell to vacate the home (as she did) after the dissolution.
[3] We deem it appropriate to indicate that this decision is without prejudice to any attempt by the appellant, other creditors, or the personal representatives in discharging their obligation to marshal the assets of his estate, to establish Mr. Braswell's legal or equitable ownership of the shares of Ryan Investments, Ltd., so as to subject its property to the administration of his estate. See Goldstein, 987 So.2d at 124 (Fla. 3d DCA 2008). In this regard, the trial court correctly noted that under the marital settlement, "the Husband shall receive the assets not distributed to the Wife in the agreement, and not titled solely to her. Although the [marital] home is not specifically mentioned, to the extent it was a marital asset, it became the property of the Husband. Under paragraph 12 of the agreement, all obligations of the Husband are a charge against his estate."