NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0527n.06

Case No. 24-5554

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

December 18, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| CHRISTOPHER CRAWFORD | ) | UNSEALED OPINION (See Appendix) |
|     Defendant- Appellant. | ) | |

Before: SILER, CLAY, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Christopher Crawford used his single-member limited liability company ("LLC"), Crawford Capital Consulting ("CCC"), to fund his lavish lifestyle. But he did so while owing restitution to the United States. Seeking to collect on this debt, the United States applied for a writ of execution on real property in Florida—a home occupied by Crawford but owned by CCC. The district court determined that CCC was Crawford's alter ego under Florida law and allowed the United States to levy the property. We now affirm.

**I.**

Eight years ago, Christopher Crawford pleaded guilty to wire fraud. The district court sentenced Crawford to 33 months' incarceration and ordered that he pay a little over $1.8 million in restitution. With respect to his financial debt to the United States, Crawford paid less than $50,000, at times contributing as little as $7 a month toward repayment.

The government sought to collect on the outstanding debt. One avenue for doing so is the Federal Debt Collection Procedures Act, which authorizes the government to levy property that a defendant debtor, like Crawford, owns. 28 U.S.C. § 3203(a); *see, e.g.*, *United States v. Coluccio*, 19 F.3d 1115, 1116 (6th Cir. 1994). Crawford's case, however, presented a wrinkle, as the Florida home in which he lived was titled in CCC's name. Yet there was a potential workaround: the federal government may seize property held by a third party if "the third party is holding the property as a nominee or alter ego of the delinquent" as understood under applicable state property law. *Spotts v. United State*s, 429 F.3d 248, 251 (6th Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977)) (interpreting, under the tax code, the government's ability to enforce a federal tax lien on property owned by a third party to a delinquent taxpayer). So the government applied for a writ of execution in district court to levy on the home, asserting that CCC was Crawford's alter ego.

To that end, the government offered evidence that Crawford, the sole member of CCC, was using the LLC to fund his generous lifestyle. For instance, he used $683,330 from CCC's accounts to pay for the custom-built home he lived in rent free. From those same accounts, Crawford also purchased a $60,000 SUV, which he titled in his name. In addition, he routinely used a bank account belonging to CCC to pay for various personal expenses, including concert tickets. CCC also served as a source of cash for Crawford. Between February 2021 and December 2022, he transferred approximately $81,000 from CCC accounts to his personal checking account. He failed to disclose any of these transactions to the government. In his sworn financial forms, he represented himself as self-employed, listing his occupation as "Freelance Landscaping/odd jobs." He also reported that his gross monthly income was $4,800, denying having earned income from any other source or business.

2

On this record, the district court issued an order for a writ of execution for the Florida property. The government served a notice to Crawford to vacate the premises. When it did, CCC sought to intervene in the proceedings and, in turn, to quash the writ of execution and levy on the grounds that CCC was not Crawford's alter ego. The district court allowed CCC to intervene but denied its request to displace the execution order. This appeal followed.

## II.

We review a district court's denial of a motion to quash a writ of execution for abuse of discretion and its underlying legal conclusions de novo. *See United States v. LaRoque*, 724 F. App'x 268, 268 (4th Cir. 2018) (per curiam); *Guy v. Lexington-Fayette Urb. Cnty. Gov't*, 624 F. App'x 922, 928 (6th Cir. 2015). A district court abuses it discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (internal quotation omitted).

We agree that CCC was Crawford's alter ego. As the home CCC owned is in Florida, the alter ego analysis is governed by Florida law. *See Spotts*, 429 F.3d at 251. As a matter of business law, we begin with the understanding that in Florida, as elsewhere, an LLC is a separate legal entity, Fla. Stat. § 605.0108(1), and its members are typically not responsible for the LLC's debt, *id.* § 605.0304(1). That said, an LLC's debts can be imputed to its owners when they wholly disregard the entity's separate form and functionally use the LLC as their alter ego. *See Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1119–20 (Fla. 1984) (applying alter ego doctrine in corporate context); *17315 Collins Ave., LLC v. Fortune Dev. Sales Corp.*, 34 So. 3d 166, 168 (Fla. Dist. Ct. App. 2010) (applying alter ego doctrine in LLC context); Fla. Stat. § 605.0503(7)(c) (preserving "equitable principles of alter ego" for LLCs). In that case, a court will pierce the

separate-entity veil and disregard the LLC, rendering its members personally liable for company debts. *See, e.g.*, *Dania Jai–Alai Palace*, 450 So. 2d at 1119–20. This remedy is equally available to hold the LLC liable for the member's debts where the member used the LLC to secrete assets and avoid personal liability. *See Braswell v. Ryan Invs.*, *Ltd.*, 989 So. 2d 38, 39 (Fla. Dist. Ct. App. 2008). A claimant seeking to pierce the veil of an LLC in Florida must establish three things: (1) the member "dominated and controlled the [LLC] to such an extent that the [LLC]'s independent existence[] was in fact non-existent"; (2) the LLC form was "used fraudulently or for an improper purpose"; and (3) "the fraudulent or improper use of the [LLC] form caused injury to the claimant." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (citations omitted). As Crawford does not contest the third element, we focus on the first two.

A. To justify piercing the veil under Florida law, the government must first show that Crawford "dominated and controlled" CCC so much so that the LLC did not have an independent existence. *Id.* The record is replete with evidence of Crawford doing so by treating CCC's financial accounts as his own personal funds. For instance, Crawford used the LLC to purchase a $683,330 home. On top of that, CCC funded the installation of a $83,000 swimming pool at the residence. CCC also provided for Crawford's luxury SUV. What is more, Crawford transferred $81,000 from CCC into his personal account. And recall that Crawford used CCC funds to pay for an array of other personal expenses. In fact, CCC seemingly served no real business purpose other than to support Crawford's lifestyle. *See State ex rel. Cont'l Distilling Sales Co. v. Vocelle*, 27 So. 2d 728, 729 (Fla. 1946) (explaining the corporate "purpose is generally to limit liability *and serve a business convenience*" (emphasis added)). This extensive use of LLC funds to pay for personal expenses and the commingling of CCC's funds with Crawford's own personal accounts demonstrate that he dominated and controlled CCC as his alter ego. *See Advertects, Inc. v. Sawyer*

4

*Indus.*, 84 So. 2d 21, 24 (Fla. 1955) (explaining that the veil can be pierced if "in some fashion . . . the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders").

Crawford responds that a commingling of personal and company funds alone is insufficient to satisfy the first factor of Florida's "pierce the veil" test. Perhaps so. But that is largely beside the point. The significant commingling here was coupled with CCC's lack of a legitimate business purpose, facts that together amply support the district court's finding that Crawford dominated and controlled CCC. On this front, consider *Eckhardt v. United States*, 463 F. App'x 852 (11th Cir. 2012) (per curiam), where the Eleventh Circuit held that the defendant was the alter ego of a corporation in which he was the sole shareholder. *Id.* at 853. Citing Florida law, the appeals court recognized that an "important factor relevant to whether an individual dominates the corporation to such an extent as to negate its separate identity is whether corporate funds were used for the individual's benefit." *Id.* at 856 (citing *Dania Jai-Alai Palace*, 450 So. 2d at 1120). *Eckhardt* then applied this principle to a record with "overwhelming evidence of commingled funds between" the sole shareholder and his corporation. *Id.* The defendant there wrote himself checks from the corporate account and used corporate funds to help pay for a personal vehicle as well as a portion of his mortgage. *Id.* That evidence confirmed "that [the owner] dominated and controlled [the corporation] as its alter ego." *Id.* at 857. Crawford's conduct, by comparison, was nearly identical (if not more egregious). Recall that he used CCC to pay for the home he lived in, his car, and a litany of other personal expenses. That fairly suffices to affirm the district court's determination on the first prong.

B. The remaining element of the veil-piercing test is satisfied if "the [LLC] form [has] been used fraudulently or for an improper purpose." *Gasparini*, 972 So. 2d at 1055 (citations

omitted). This situation arises when a limited liability entity is used as "a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Aztec Motel, Inc. v. State ex rel. Faircloth*, 251 So. 2d 849, 852 (Fla. 1971) (citation omitted).

By any measure, Crawford improperly used CCC to avoid paying his restitution judgment. In his sworn financial paperwork, he failed to disclose the existence of CCC, to say nothing of the income he derived from the LLC. Instead, Crawford represented to the government that he was a self-employed "freelance landscaper" making $4,800 a month, deriving no other income. In truth, Crawford transferred more than $81,000 of company funds into his personal accounts. On top of that, he utilized company funds to purchase a custom home, buy a luxury car, and cover personal expenses. In total, Crawford spent over $900,000 of CCC's funds on personal expenses while owing nearly double that amount in restitution. His failure to disclose combined with his immense spending supports the district court's finding that Crawford improperly used CCC to hide assets and avoid restitution. *See Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. Dist. Ct. App. 2000) (listing "to hide assets" as an "unlawful or improper use" of a corporation).

Crawford advances five arguments to the contrary. First, he asserts that because CCC was established prior to his criminal conviction, the LLC could not have been organized for an improper purpose. But proper organization at the start does not preclude a finding of later misuse. *See, e.g.*, *W.P. Prods., Inc. v. Tramontina U.S.A., Inc.*, 101 F.4th 787, 792–93 (11th Cir. 2024) (per curiam) (allowing veil-piercing under Florida law where a corporation was organized for a proper purpose but later used improperly to avoid paying creditors). In the Sunshine State, it suffices that

the LLC form has "*been used* fraudulently or for an improper purpose." *Gasparini*, 972 So. 2d at 1055 (emphasis added) (citations omitted).

Second, Crawford believes it is commonplace for business executives to live in company owned homes and drive company owned vehicles. True, a business owner's use of company owned items may not always be improper. Yet the facts here reveal far more. Start with the car. Crawford did not drive a company owned vehicle—rather, he used CCC funds to purchase the vehicle titled in his own name. Now the home. Crawford admits he used the LLC to purchase the home because, as a felon with bad credit and little wealth, he was unable to do so alone. And Crawford never paid rent on the home. These facts belie his assertion that he was merely living in company owned housing, or, relatedly, that the purchase of the home was an investment for the LLC's benefit. *Cf. Advertects*, 84 So. 2d at 24 (declining to pierce the corporate veil when there was "no showing at all that the stockholders had improperly converted any of [the corporate entity's] property to their own use").

Third, Crawford emphasizes that he did not transfer his own personal assets to CCC to purchase the home. Rather, CCC paid for the home with cryptocurrency it owned prior to Crawford's conviction. While transferring personal assets to an LLC is one way to improperly use an LLC, it is not the only way. Take, for example, the fact that Crawford failed to disclose the existence of CCC (or any income from it) on his sworn financial forms to the government. Those actions support the district court's finding that Crawford used CCC to hide funds to avoid payment of his restitution. *See Aztec Motel*, 251 So. 2d at 852 (explaining that improper use occurs when the business is used to evade some legal requirement or accomplish fraud).

Fourth, Crawford argues that because he "paid [restitution] faithfully" he was not using CCC to shield his assets. Those payments had dwindled to just dollars a month, which tests the

7

meaning of "faithful." In any event, there is no authority suggesting that some repayment of restitution allows the defendant to shield his assets from additional repayment.

Finally, Crawford argues Florida's homestead exception proves that he never intended to shield assets from the government. The Florida Constitution "protects the homestead from forced sale by creditors," *Snyder v. Davis*, 699 So. 2d 999, 1001 (Fla. 1997), when it is owned by a "natural person," Fla. Const. art. X, § 4(a)(1). According to Crawford, if he wanted to shield assets from the government, he would have purchased the home himself, thereby immunizing it from seizure. But as Crawford acknowledges, this expectation would not have spared his home. Rather, under the Mandatory Victims Restitution Act, the government would still have been able to seize the property to satisfy the restitution judgment. *See* 18 U.S.C. § 3613(a)(1) (exempting seizure for only a series of *federal* exemptions). Equally true, simply because Crawford could have devised an improved means for concealment does not mean that the one he chose was not an attempt to hide assets from the government.

In sum, we agree that Crawford improperly used CCC to avoid restitution. And with all prongs of the veil-piercing test satisfied, we likewise agree that CCC was Crawford's alter ego. Therefore, the district court did not abuse its discretion in denying CCC's motion to quash the government's writ of execution.

\* \* \* \* \*

We affirm the judgment of the district court.

APPENDIX

On December 18, 2024, the court filed this opinion under seal, and granted counsel ten (10) days to move for redaction of sensitive information, if any, contained in the opinion.  On January 8, 2025, the court, having received no motion for redactions, unsealed the opinion.  The date the opinion is deemed to have been filed remains December 18, 2024.