[773 NYS2d 420]

Sweeney, Cohn, Stahl & Vaccaro et al., Appellants, v Amy Kane, Defendant, and George Kane et al., Respondents.

Second Department, March 8, 2004

## APPEARANCES OF COUNSEL

*Sweeney, Cohn, Stahl, Spector & Frank*, White Plains (*Julius W. Cohn* of counsel), for appellants.

*Meyer, Suozzi, English & Klein, P.C.*, Mineola (*Jeffrey G. Stark* and *Lynn M. Brown* of counsel), for respondents.

## OPINION OF THE COURT

CRANE, J.

This case presents an unusual request for relief, a so-called reverse-piercing of the corporate veil with the objective of applying a corporate asset to satisfy judgments against a shareholder. On motions and a cross motion for summary judgment, the Supreme Court denied resort to this remedy and dismissed the complaint. The Supreme Court reached this result because the stock of the defendant corporation, incorporated in the State of Florida, is held by the individual defendants, a husband and wife, as tenants by the entireties. Florida law protects such holdings from the creditors of only one of the spouses. We reverse the judgment and vacate the order, grant the plaintiffs' motions for summary judgment, deny the cross motion of the defendants George Kane and Gin Properties, Inc., for summary judgment dismissing the complaint insofar as asserted against them, reinstate the action against those defendants, and remit this matter to the Supreme Court, Suffolk County, for the purpose of appointing a receiver to sell the corporate real property and make appropriate distribution of the proceeds.

FACTS

The plaintiffs, two law firms, represented Amy Kane, a defaulted defendant herein, individually and in her capacity as the executrix of the estate of Philip Petter. The plaintiff Seltzer, Sussman and Habermann (hereinafter the Seltzer Firm) represented Amy Kane in the administration of the estate then pending in the Surrogate's Court, Westchester County. The Seltzer Firm eventually brought a proceeding against her in that court to collect an attorney's fee. By letter dated January 22, 1993, Amy Kane retained the predecessor of the plaintiff, Sweeney, Cohn, Stahl & Vaccaro (hereinafter the Sweeney Firm) to represent her in the attorney fee proceeding. The Sweeney Firm negotiated a settlement and the parties entered into a

stipulation dated October 18, 1994, wherein Amy Kane agreed to pay the sum of $13,000 within 21 days in full discharge of her fee obligation to the Seltzer Firm.

Prior thereto, on June 16, 1994, Amy Kane and her husband George Kane incorporated the defendant Gin Properties, Inc., as a subchapter S corporation in Florida. The Kanes resided at that time in Dix Hills, New York, and owned a condominium in Sarasota, Florida. They used the Sarasota condominium address as the corporate address. Less than one week later, the Kanes entered into a contract to buy a house located at 73 Gin Lane in Southampton, New York. The contract contained a provision authorizing the Kanes to assign the home to a corporate entity of which they are the sole shareholders.

After title closed, Gin Properties, Inc. became the owner of 73 Gin Lane in Suffolk County, the principal residence of the Kanes. The defendant George Kane is a dentist licensed in the State of New York, but not in Florida. He maintains two offices in Long Island and one in Westchester County. Thus, 73 Gin Lane is within commuting distance of his professional offices. The money to fund the purchase of this home came from accounts maintained by George Kane. A portion of the purchase funds, $150,000, was derived from a joint account maintained by Smith Barney for the Kanes at their Sarasota, Florida address.

When Amy Kane failed to pay the $13,000 attorney's fee in accordance with the stipulation, the Seltzer Firm obtained a judgment dated March 8, 1995, for that principal amount. Shortly thereafter, the Sweeney Firm sued Amy Kane for the balance due on its retainer. On February 28, 1996, it obtained a judgment against Amy Kane in the total sum of $5,049.93. Both the Sweeney and Seltzer Firms then engaged in proceedings in Florida to collect on their judgments. They were unsuccessful due to Florida law that permits spouses to hold personal property as well as realty in the form of tenancies by the entireties. This form of ownership, under Florida law, protects the property where there are judgment creditors of only one of the spouses (*see Beal Bank, SSB v Almand & Assoc.,* 780 So 2d 45, 53 [Fla 2001]). During the course of their efforts, however, the plaintiffs uncovered the existence of Gin Properties, Inc.

THIS LAWSUIT

The plaintiffs commenced this action in the Supreme Court, Suffolk County, on the theory that Gin Properties, Inc. was the alter ego of the Kane defendants and that its property should be

sold to pay the plaintiffs' judgments. After the defendant Amy Kane defaulted in this action and following certain discovery, the plaintiffs separately moved, inter alia, for summary judgment, for the appointment of a receiver, and for a direction that the realty owned by Gin Properties, Inc. be sold at public auction. The defendants George Kane and Gin Properties, Inc. cross-moved for summary judgment dismissing the complaint insofar as asserted against them.

The Supreme Court granted the defendants' cross motion and denied the plaintiffs' motions. It held that the law of Florida controlled the issue of piercing the corporate veil and that, because the stock of Gin Properties, Inc. was owned by George Kane and Amy Kane as tenants by the entireties, the plaintiffs cannot reverse-pierce the corporate veil of a Florida corporation. The court observed that the defendant Gin Properties, Inc. was incorporated for a legitimate purpose before the plaintiffs obtained their respective judgments, thereby implying that the sequence of events precluded reverse-piercing.

CHOICE OF LAW

We agree with the Supreme Court that Florida law must be applied in determining whether the plaintiffs may reverse-pierce the corporate veil of Gin Properties, Inc. Ordinarily, the state of incorporation has the greatest interest in determining the extent of insulation that will be afforded to shareholders of corporations incorporated under its laws (*see Kalb, Voorhis & Co. v American Fin. Corp.,* 8 F3d 130, 132 [2d Cir 1993]; *Fletcher v Atex, Inc.,* 861 F Supp 242, 244 [SD NY 1994], *affd* 68 F3d 1451, 1456 [2d Cir 1995]; *Soviet Pan Am Travel Effort v Travel Comm., Inc.,* 756 F Supp 126, 131 [SD NY 1991] [applying New York's "paramount interest" test, citing *Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372, 382 (1969); *Miller v Miller,* 22 NY2d 12, 15-16 (1968)]). The plaintiffs recognize the efficacy of the "paramount interest" test yet adumbrate it in contending that New York law should apply to its theory of reverse-piercing. They so argue because they do not believe they would be successful under Florida law. They are in error.

REVERSE-PIERCING BY AN OUTSIDER

Piercing the corporate veil is an equitable concept that allows a creditor to disregard a corporation and hold its controlling shareholders personally liable for the corporate debt. Reverse-piercing flows in the opposite direction and makes the corporation liable for the debt of the shareholders (*see State of New York v Easton,* 169 Misc 2d 282, 288-289 [1995]; *see generally*

*C.F. Trust, Inc. v First Flight Ltd. Partnership,* 266 Va 3, 10-11, 580 SE2d 806, 810 [2003]; Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards,* 16 J Corp L 33 [Fall 1990]). In both situations there is a disregard of the corporate form, and the controlling shareholders are treated as alter egos of the corporation and vice versa. Under Florida law, when outsiders seek to pierce the corporate veil the existence of control by the shareholder is not enough; there must also be a showing of improper conduct such as to mislead creditors or to work a fraud on them or to use the corporation as a means of evading liability with respect to a transaction that was personal and not corporate (*see Dania Jai-Alai Palace v Sykes,* 450 So 2d 1114, 1121 [Fla 1984]; *Riley v Fatt,* 47 So 2d 769, 773 [Fla 1950]; *McFadden Ford v Mancuso,* 766 So 2d 241, 242 [Fla App 2000]; *Lipsig v Ramlawi,* 760 So 2d 170, 187 [Fla App 2000]). New York law is compatible (*see Morris v New York State Dept. of Taxation & Fin.,* 82 NY2d 135, 141 [1993]; *Rotella v Derner,* 283 AD2d 1026 [2001]; *Miramax Film Corp. v Abraham,* 2003 WL 22832384, * 6-8, 2003 US Dist LEXIS 21346, *16-23 [SD NY, Nov. 25, 2003]; *cf. TNS Holdings v MKI Sec. Corp.,* 92 NY2d 335, 339 [1998]; *Walkovszky v Carlton,* 18 NY2d 414, 420 [1966]).

Reverse-piercing is likewise recognized under Florida law:

"A corporation's veil will be pierced where the corporation's controlling shareholder[s] formed or used the corporation to defraud creditors by evading liability for preexisting obligations . . . The usual result of piercing the corporate veil is that the controlling shareholder or shareholders become liable for the corporate liabilities . . . The remedy is equally available, however, to hold the corporation liable for the debts of controlling shareholders where the shareholders have formed or used the corporation to secrete assets and thereby avoid preexisting personal liability." (*Estudios, Proyectos e Inversiones de Centro Am., S.A. [EPICA] v Swiss Bank Corp. [Overseas] S.A.,* 507 So 1119, 1120 [Fla App 1987] [hereinafter *EPICA*].)

In *The Reverse Pierce Doctrine: Applying Appropriate Standards (supra),* Professor Crespi recommends that courts apply six standards in deciding the merits of a reverse-piercing claim by an outsider. Among them are: (1) the degree of impairing legitimate expectations of adversely affected shareholders not responsible for the conduct of the insider giving rise to the

claim; (2) the degree of control exercised by the corporation over the insider and the degree to which the plaintiff's injury is related to the corporation's dominion over the insider;[1] and (3) the degree to which public convenience would be served by a reverse-pierce (*see The Reverse Pierce Doctrine: Applying Appropriate Standards, supra* at 54). The *EPICA* case, on the other hand, only lays down two criteria: ownership and control of the corporation and use of the corporation to secrete personal assets to defraud personal creditors of the controlling insider (*see EPICA, supra* at 1121).

APPLICATION OF REVERSE-PIERCING TO THE DEFENDANTS

The record demonstrates that the Kanes are residents and domiciliaries of the State of New York. George Kane's assertion that they are residents and domiciliaries of Florida is utterly conclusory and contradicted by the uncontroverted proof supporting the plaintiffs' motions. Therefore, had the Kanes acquired title to 73 Gin Lane in their own right, they would have held it as tenants by the entireties (*see* 24 NY Jur 2d, Cotenancy and Partition § 44). New York law would apply to such title under the "paramount interest" test (*see Intercontinental Planning v Daystrom, Inc., supra; cf. James v Powell,* 19 NY2d 249, 257-258 [1967]).[2] Thus, the plaintiffs' judgments could have become liens against Amy Kane's interest in the home and been sold under an execution (*see In re Persky,* 78 BR 657, 659 [ED NY 1987], *affd* 108 BR 418 [ED NY 1989], *revd on other grounds* 893 F2d 15 [2d Cir 1989]; *Finnegan v Humes,* 252 App Div 385, 387 [1937], *affd* 277 NY 682 [1938]; Scheinkman, New York Law of Domestic Relations § 2.10, at 40 [11 West's NY Prac Series 1996]; 24 NY Jur 2d, Cotenancy and Partition § 54; *cf. Lauro v Bradley,* 266 AD2d 911 [1999]), though this remedy may be impractical (*see* 9B Carmody-Wait 2d § 64:482, at 439-440). By contrast, under Florida law only the creditors of both spouses may attach property held as ten-

---

**1.** It is doubtful that this standard is appropriate. When a corporation and its controlling shareholder are alter egos, it seems that domination becomes a two-way street. Professor Crespi never explains why it is important that the corporation control the shareholder rather than vice versa except to say "the issue is corporation liability for insider actions." (*Reverse Pierce Doctrine: Applying Appropriate Standards, supra* at 65.) In any event, this is not a factor under Florida law.

**2.** *James v Powell* (*supra* at 257) makes the additional point that New York has "an interest in assuring that a New York judgment creditor is not prevented by wrongful acts of his debtor from satisfying the judgment." This squarely implicates Professor Crespi's standard of the degree to which public convenience, at least in New York, would be served by a reverse-pierce.

ants by the entireties, and the creditor of one spouse alone may not reach this property (*see Beal Bank, SSB v Almand & Assoc., supra*), absent a showing of fraud (*see Meyer v Faust*, 83 So 2d 847 [Fla 1955]).

When the Kanes contracted to buy 73 Gin Lane, they were trying to accomplish the avoidance of Amy Kane's obligations to the Seltzer Firm and the Sweeney Firm by acquiring the property through a Florida corporation. This avoided the possibility of an execution against Amy Kane's potential interest in the realty as a tenant by the entireties (*see Finnegan v Humes, supra*), and insulated the stock held by the Kanes as tenants by the entireties from levy by judgment creditors because of the protection of Florida law. These same machinations satisfied the prerequisites for reverse-piercing under the *EPICA* case.

The Kanes utterly dominate Gin Properties, Inc., and they formed it to protect assets from claims of creditors such as the plaintiffs, thereby, in effect, defrauding them (*see Shamrock Oil & Gas Co. v Ethridge*, 159 F Supp 693, 697-698 [D Colo 1958]; *Central Fibre Prods. Co. v Lorenz*, 246 Iowa 384, 388-389, 66 NW2d 30, 33 [1954]). They have been paying the real property taxes and mortgage principal and interest for 73 Gin Lane, in which they reside, taking income tax deductions on their own tax returns for the interest and taxes. They are in complete control of the real property, improving it with their own funds, including the addition of a home entertainment theater and putting green. Although expenses for these purposes and for the Kanes' family, such as college expenses, were paid by corporate checks, these were fed by loans made by the Kanes to Gin Properties, Inc. Such domination makes Gin Properties, Inc. (named for the road on which their Suffolk County home is located) an alter ego of the Kane defendants. Therefore, its property is subject to the claims of their creditors (*see EPICA, supra*).

GEORGE KANE ACTING IN CONCERT

As Professor Crespi propounds, courts should be concerned with the impairment of legitimate expectations of adversely affected shareholders not responsible for the conduct of the insider. The District Court of Appeal in *EPICA* did not confront this issue because the only shareholder there was the individual whose obligation the plaintiff sought to impose on his corporation. In the case at bar, the defendant George Kane is not the judgment debtor. But he certainly acted in concert with the judgment debtor, Amy Kane, in resorting to the Florida corporate form of ownership of their new primary residence at

73 Gin Lane. George Kane never claimed otherwise, and he raised no triable issue of fact respecting his actions in erecting the Florida corporate ownership to defeat, at least, Amy Kane's creditors. Indeed, in a prior motion for summary judgment which was subsequently withdrawn, George Kane went so far in his efforts to protect against the judgment claims of the plaintiffs as to have falsely sworn that he alone was the shareholder of Gin Properties, Inc., and that his wife never had any ownership interest therein.

Because George Kane, among other things, was a driving force behind the scheme to avoid Amy Kane's creditors, and he benefitted as much as she did from using the corporate form for personal purposes, gaining income tax and habitat advantages, the conclusion is ineluctable that the Kanes were acting in concert. Moreover, a portion of Amy Kane's funds from a joint account, in excess of the value of the two judgments, was used to purchase the house on Gin Lane. Thus, George Kane may be held jointly and severally liable for the constructive, if not actual, fraud on Amy Kane's creditors (*see Ravo v Rogatnick,* 70 NY2d 305, 309 [1987]; *Manes v Manes,* 277 AD2d 359, 362 [2000]; *see also Great Neck Plaza, L.P. v Le Peep Rests., LLC,* 37 P3d 485, 491 [Colo App 2001]).

It is this acting in concert that deprives of any significance the circumstance that George and Amy Kane hold their shares in Gin Properties, Inc. as tenants by the entireties. There is an additional reason why this form of ownership is not controlling. The situs of the shares of a corporation is either where the corporation exists or where the shareholders are domiciled (*see Matter of Enston,* 113 NY 174, 181 [1889]). Since it is established on the record before us as a matter of law that the domicile of the Kanes is in New York, their stock in Gin Properties, Inc. is located here. This situs, however, does not necessarily determine the legal effect of the manner in which the shares are held. If New York law were to apply, the stock could not be titled as a tenancy by the entireties which New York law does not recognize for personalty (*see Matter of Albrecht,* 136 NY 91 [1892]; Helm, *Personal Property,* 41 Cornell LQ 749, 750 [1956]). As such it would be subject to the judgments against Amy Kane up to the value of her one-half interest in the stock (*see* 24 NY Jur 2d, Cotenancy and Partition §§ 33-34).

No case has been found to enlighten whether the law of the place of incorporation or the law of the situs of the stock determines the nature of its title (*cf.* Restatement [Second] of

Conflict of Laws §§ 65, 303, Comment *d* [stating that "uniform treatment of the shareholders of a corporation is an important objective which can only be attained by having their rights and liabilities with respect to the corporation governed by a single law"]). It makes no difference, however, to apply Florida law because where, as here, personalty is titled as a tenancy by the entireties as part of a fraudulent scheme, the property may be reached by the creditors of one of the spouses (*see Meyer v Faust, supra; United States v Gurley,* 415 F2d 144, 149 [5th Cir 1969]; *United States v Simpson,* 1998 WL 751904, \*3, 1998 US Dist LEXIS 10478, \*7-11 [ND Fla, June 25, 1998]; *Lapp v United States,* 316 F Supp 386, 389 [SD Fla 1970]).

REMEDY

The verified complaint, inter alia, sought to direct the sale of certain real property owned by the defendant Gin Properties, Inc. at a public auction with the proceeds to be used to satisfy outstanding mortgages and then to satisfy the plaintiffs' judgments.[3] The plaintiffs' motions sought the appointment of a receiver for the purpose of conducting the sale and distributing the proceeds. The *EPICA* case does not directly answer the question of what remedy follows the successful reverse-piercing of a corporate veil because that case involved a prejudgment attachment. Yet, under Florida Statutes Annotated § 76.14, the levy of a writ of attachment will bind the real property attached and will represent a lien thereon. Under the attachment procedure in New York, an execution may be issued on a subsequent judgment which will subject the attached property to the satisfaction of the judgment (*see* CPLR 5203, 6226).

Because there are priorities of liens against the real property of Gin Properties, Inc., the appointment of a receiver is an appropriate device to supervise the sale of its real property and the distribution of the proceeds thereof in accordance with legal priorities.

CONCLUSION

By this decision, we are doing nothing more than applying the law of the State of Florida to reverse-pierce the corporate veil of a Florida corporation for the purpose of allowing New York judgment creditors to collect their judgments against a New York domiciled judgment debtor.

---

**3.** Although the complaint alleged that a judgment should be issued declaring that the Kanes are the actual owners of the property as tenants in common, the wherefore clause never asked for this relief. In any event, such relief lacks merit since the property is owned by the corporate defendant and not the Kanes.

Accordingly, we reverse the judgment, on the law, with one bill of costs, vacate the order, grant the motions, deny the cross motion, reinstate the action as against the defendants George Kane and Gin Properties, Inc. and remit this matter to the Supreme Court, Suffolk County, for the purpose of appointing a receiver and entering an appropriate order governing his or her duties and providing for notice to all interested parties.

S. MILLER, J.P., SCHMIDT and TOWNES, JJ., concur.

Ordered that the judgment is reversed, on the law, with one bill of costs, the order is vacated, the motions are granted, the cross motion is denied, the action is reinstated as against the defendants George Kane and Gin Properties, Inc., and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings in accordance herewith.