[869 NYS2d 61]

Hotel 71 Mezz Lender LLC, Respondent, v Robert D. Falor et al., Appellants, et al., Defendant.

First Department, December 16, 2008

APPEARANCES OF COUNSEL

*Tashjian & Padian*, New York City (*Bradley M. Rank* and *Gerald Padian* of counsel), for Robert D. Falor and others, appellants.

*Kilpatrick Stockton LLP*, New York City (*Joseph Petersen* and *Christopher Lick* of counsel), for Jennifer Falor, appellant.

*Patterson Belknap Webb & Tyler, LLP*, New York City (*Stephen P. Younger* and *Sarah E. Zgliniec* of counsel), and *Berger & Webb LLP*, New York City (*Steven A. Berger* and *Thomas E. Hone* of counsel), for Guy T. Mitchell, appellant.

*Gibson, Dunn & Crutcher LLP*, New York City (*Robert L. Weigel* of counsel), and *Akin Gump Strauss Hauer & Feld LLP*, New York City (*John W. Berry* and *Robert H. Hotz, Jr.* of counsel), for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

On this appeal, appellants seek to vacate the prejudgment order confirming the ex parte attachment of their membership

interests in 23 entities, including Delaware, Georgia and Florida limited liability companies and a solely owned Florida corporation, and the subsequent orders conditionally appointing a receiver of those out-of-state interests.

The facts and the procedural history of the case are not in dispute. In March 2005, plaintiff made a $27,338,801 mezzanine loan to Chicago H & S Senior Investors, LLC for the purpose of acquiring and renovating Hotel 71 in downtown Chicago. Repayment of this loan was personally guaranteed by appellants. By its terms, the guaranty is governed by New York law and the guarantors submitted to the jurisdiction of any federal or state court in the City of New York. After the borrower defaulted on the loan and filed for bankruptcy, plaintiff commenced this action, in April 2007, to enforce the guaranty. On September 25, 2007, after defendants had appeared and answered, asserting counterclaims, plaintiff moved in the Commercial Division, pursuant to CPLR 6201, for an ex parte order of attachment because of the likelihood that if defendants were provided with notice they would avoid entering the jurisdiction. The court signed the ex parte order, but, according to its subsequent order confirming the order of attachment, stayed service of the levy upon defendant Mitchell to afford him the opportunity to oppose the application.

On October 23, 2007, Mr. Mitchell appeared at the New York County courthouse for his deposition, in the course of which he was informed that the order of attachment had been issued four weeks earlier and that the court was waiting to hear counsel on the matter. After hearing counsel, the court instructed the sheriff to serve Mr. Mitchell in the courtroom. Thereafter, by order to show cause dated November 2, 2007, plaintiff moved pursuant to CPLR 6211 to confirm the order of attachment and for expedited disclosure pursuant to CPLR 6220. Plaintiff later moved, by order to show cause dated January 25, 2008, to strike the answer and for summary judgment in the event any of the appellants, other than Jennifer Falor, did not appear for their scheduled depositions. That motion and any resulting order or judgment is not the subject of these consolidated appeals. Subsequently, by order to show cause dated March 19, 2008, plaintiff moved pursuant to CPLR 5228 for appointment of a receiver because of appellants' alleged refusal to produce documents related to their finances and their refusal to attend duly noticed depositions.

In the first order appealed from, entered February 8, 2008, the court granted plaintiff's motion to confirm the order of at-

tachment in the sum of $65,149,926, on the grounds that plaintiff demonstrated the statutory requisites to confirm attachment and that the court, in its discretion, found that attachment was necessary in aid of security. Thereafter, in the second order and supplemental order appealed from, entered April 7, 2008, the court granted plaintiff's motion pursuant to CPLR 3126 and 5228, conditioned upon the entry of judgment, and appointed a receiver of the personal property of all appellants, which is identified in the order as their ownership and/or management interests in various out-of-state limited liability companies. In so ruling, the court found that such relief was warranted by the defendants' refusal to produce documents related to their finances and their refusal to appear at depositions as ordered by the court.

■ It is long settled in New York that the fundamental rule in attachment proceedings is that "the *res* must be within the jurisdiction of the court issuing the process in order to confer jurisdiction" (*National Broadway Bank v Sampson*, 179 NY 213, 222 [1904]). Pursuant to that rule and for the following reasons, we reverse and vacate the order of attachment and the appointment of a receiver.

While the situs of the shares of a corporation is either "where the corporation exists" or where the shareholders are domiciled (*Matter of Enston*, 113 NY 174, 181 [1889]; *Sweeney, Cohn, Stahl & Vaccaro v Kane*, 6 AD3d 72, 79 [2004], *lv dismissed* 3 NY3d 751 [2004]), with respect to intangible interests such as debts and interests in corporate stock, the question whether the res is within the jurisdiction of the court issuing the process is less easily determined (*Sampson*, 179 NY at 223). Nevertheless, an attachment of a debt or other intangible property can only be effected as against the debtor or obligor by service upon him or her when he or she is domiciled within the state (*id.* at 223-224).

The mere fact that the order of attachment in this case was served upon defendant Mitchell, a resident and domiciliary of Florida, who was in New York temporarily solely to attend his deposition and does not dispute that he is the proper garnishee within the meaning of CPLR 5201 (c) (1), does not establish the situs of the res, i.e., defendants' ownership and/or management interests, if any, in 23 entities, including Delaware, Georgia and Florida limited liability companies and a Florida corporation of which Mr. Mitchell is the sole shareholder, in New York.

The CPLR does not address the situs of such intangible property for attachment purposes (*see ABKCO Indus. v Apple Films,*

39 NY2d 670, 675 [1976]). As noted by Chief Judge Cardozo more than 75 years ago:

> "The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions" (*Severnoe Sec. Corp. v London & Lancashire Ins. Co.*, 255 NY 120, 123-124 [1931] [citations omitted]).

Since a limited liability company is a hybrid of a corporation and a limited partnership, owners of membership shares or interests not represented by certificates in a limited liability company should have rights comparable to those of corporate shareholders and limited partners (*see Bischoff v Boar's Head Provisions Co., Inc.*, 436 F Supp 2d 626, 632 [SD NY 2006]). In *National Broadway Bank v Sampson* (179 NY at 219), the Court held that an interest in a limited partnership—as with a corporation—is situated where the partnership is formed and operates.

The dissent acknowledges that, "[i]n order to be subject to attachment, property must be within the court's jurisdiction" (quoting *Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101, 101 [2000]) and that, unlike intangible property, "[t]angible personal property obviously has a unique location and can only be attached where it is" (quoting *ABKCO Indus.*, 39 NY2d at 675). The dissent then relies on *Harris v Balk* (198 US 215 [1905]) for the proposition that the situs of a debt is wherever the debtor can be found. However, although the *Harris* Court found that the situs of the intangible in that case (an oral promise to repay a $180 debt) had been fixed, "the same intangible may not have the same situs in other contexts" (Siegel, NY Prac § 487, at 826 [4th ed]). The dissent also neglects to point out that the bank accounts unsuccessfully sought to be attached in *Matter of National Union (supra)* clearly were intangible property.

While recognizing that defendants' recitation of the law regarding the court's lack of jurisdiction over the interests

sought to be attached was correct, the court nevertheless found it unpersuasive because plaintiff, rather than using the provisional remedy of attachment for jurisdictional purposes, was seeking to use it as a security device to ensure that any money judgment it obtained would be satisfied. However, whether it is being used for purposes of obtaining in rem or quasi in rem jurisdiction or for purposes of obtaining security for a potential money judgment against a nondomiciliary defendant, given the facts of this case, the fundamental principles governing the provisional remedy of attachment and the situs of intangible property are the same.

As noted by the Commercial Division, defendants voluntarily submitted to the jurisdiction of the court pursuant to the terms of the guaranty of payment sued upon. It is also undisputed that neither Mr. Mitchell and the other nondomiciliary defendants nor any of the nondomiciliary entities in which they have or are claimed to have an attachable interest have any tangible or intangible property in New York. Defendants' only apparent assets are commercial properties located in the states where the aforementioned entities are registered or incorporated. Thus, applying the foregoing principles, we find that it was error to grant plaintiff's motion to confirm the ex parte order of attachment previously issued by the court.

Likewise, it is equally well settled that where a judgment relates strictly to the internal affairs and management of a foreign corporation, or in this case a foreign limited liability company, "the court should decline jurisdiction [to appoint a receiver] because such questions are of local administration, and should be relegated to the courts of the State or country under the laws of which the corporation [or in this case limited liability company] was organized" (*Acken v Coughlin*, 103 App Div 1, 3 [1905]). Instead of appointing a receiver of defendants' ownership and/or management interests in the foreign entities with the power to assume any management role they may have in those entities and authorizing him to seek the aid of the courts of those states in which the real estate is located in executing his duties as receiver, plaintiff, the now judgment creditor, should have been relegated to the states of the companies' situses where it could have receivers appointed upon a proper showing of necessity (*see Matter of Burge [Oceanic Trading Co.]*, 282 App Div 219 [1953], *affd* 306 NY 811 [1954]).

Finally, in determining whether the appointment of a receiver constitutes a provident exercise of discretion, we consider the

"alternative remedies available to the creditor," "the degree to which receivership will increase the likelihood of satisfaction," and "the risk of fraud or insolvency if a receiver is not appointed" (*Matter of Chlopecki v Chlopecki*, 296 AD2d 640, 641 [2002], quoting *United States v Zitron*, 1990 WL 13278, *1, 1990 US Dist LEXIS 1049, *2 [SD NY 1990]). Here, at the time the receiver was appointed, defendants were contemporaneously restrained pursuant to CPLR 5229 from transferring or otherwise disposing of their assets, including their interests, if any, in the nondomiciliary companies, and that part of the supplemental order appealed from is affirmed.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered February 8, 2008, which, inter alia, granted plaintiff's motion to confirm an order of attachment, should be reversed, on the law, without costs, plaintiff's motion to confirm the order of attachment denied and the ex parte order of attachment, same court and Justice, dated September 25, 2007, vacated. The order and supplemental order of the same court and Justice, entered April 7, 2008, which, inter alia, granted plaintiff's motion for the appointment of a receiver, and authorized the receiver to exercise dominion and control over certain designated property, should be modified, on the law, the motion for the appointment of a receiver denied, the order and supplemental order vacated except the tenth decretal paragraph of the supplemental order which restrains defendants from disposing of or diverting their ownership and/or management interests in the entities designated in subsections (a), (b), (c), (d), and (e) of the first decretal paragraph in the supplemental order, and otherwise affirmed, without costs.

Motion seeking leave to enlarge record denied.

SAXE, J. (dissenting). When a plaintiff's right to a money judgment against a defendant appears to be clear, and grounds for a prejudgment attachment of assets owned by the defendant are similarly self-evident, if means exist by which those assets may be treated as located within this state so as to be available for attachment, the response of a court considering a challenge to such an attachment should not be to bend over backwards to protect such assets from the plaintiff's reach.

The position advanced in this writing, that service on a proper garnishee while that individual is in New York—even temporarily—is enough to permit the attachment of an intangible as-

set, the situs of which would otherwise be outside the state, is supported by the statutory framework of CPLR article 62 and *Harris v Balk* (198 US 215, 222 [1905]). The proposition advanced by the majority, that an attachment of intangible property can be properly effected only if the garnishee is *domiciled within this state*, finds support only in a Court of Appeals decision from 1904 (*see National Broadway Bank v Sampson*, 179 NY 213 [1904]), and not in the statutory framework of CPLR article 62 or the subsequent holding of the United States Supreme Court in *Harris v Balk* (*supra*). Accordingly, in this action to enforce a guaranty of payment, I would affirm the motion court's grant of plaintiff's application to attach defendants' interests in the specified entities.

## Facts

In March 2005, plaintiff Hotel 71 Mezz Lender LLC loaned funds to Chicago H & S Senior Investors, LLC, for the acquisition and renovation of a hotel, Hotel 71, located in downtown Chicago. Defendants Robert D. Falor, David Falor, Chris M. Falor, Jennifer Falor, Geoffrey L. Hockman and Guy T. Mitchell executed a personal guaranty of payment unconditionally agreeing to be jointly and severally liable for the borrower's obligations. The borrower thereafter defaulted on the loan, ultimately filing for bankruptcy protection in the Northern District of Illinois. It is acknowledged that the loan debt was a valid and payable claim.

Plaintiff commenced this action to enforce the guaranty, and obtained an ex parte order of attachment over defendants' interests in 23 out-of-state entities, specifically, eight Florida LLCs, nine Georgia LLCs, five Delaware LLCs and one Florida corporation. The motion court permitted the levy to be served upon defendant Guy Mitchell, as garnishee and as the apparent manager of the entities, after he appeared in court to oppose the application.

Plaintiff's motion for the requisite order confirming the ex parte order of attachment (*see* CPLR 6211 [b]) was granted in the first order appealed from, in which the court observed that "[d]efendants are non-domiciliaries, and have voluntarily submitted to the jurisdiction of the court, accepted service of summons and complaint upon them, and served answers and counterclaims." As to defendants' contention that the court lacked jurisdiction, the court explained that "[r]ather than utilizing the device of attachment for jurisdictional purposes in

order to obtain quasi in rem jurisdiction, the Lender is pursuing attachment to serve the second function of the provisional remedy of attachment: as a security device, to insure that a money judgment will be satisfied in the event that it is obtained." It concluded that "where, as here, the Defendants are subject to in personam jurisdiction, and the plaintiff is pursuing attachment in aid of security, the correct inquiry is whether the defendant's past or present conduct demonstrates an identifiable risk that the defendant would be unable to satisfy a future judgment," a threshold satisfied by the evidence that defendants are in a precarious financial position and likely will be unable to satisfy any judgment obtained by plaintiff. Thereafter, in the second order appealed from, the motion court granted plaintiff's subsequent motion for appointment of a receiver to administer or sell any real or personal property in which defendants had any ownership interest.

Defendants challenge both the validity of the order of attachment and the appointment of a receiver over their properties. The majority agrees with defendants' contention that the assets in question are located out of state and are therefore not subject to attachment, and, on that ground, vacates the attachment and the subsequent orders.

## Discussion

It should be emphasized at the outset that personal jurisdiction was properly asserted over defendants. The guaranty of payment was negotiated in the State of New York, involved a loan agreement that was entered into in New York and concerned funds disbursed here, and was signed by Robert D. Falor, Jennifer Falor, David Falor, Chris Falor, Amy Mitchell, Geoffrey Hockman and Guy T. Mitchell. By the broad and unconditional terms of the guaranty, defendants waived all defenses and counterclaims except actual payment (*see Citibank v Plapinger*, 66 NY2d 90, 92 [1985]; *Red Tulip, LLC v Neiva*, 44 AD3d 204, 207-209 [2007], *lv dismissed* 10 NY3d 741 [2008]), and it is undisputed that payment was never made. Plaintiff's right to seek all available relief against defendants is manifest, including the provisional remedy of attachment.

It is also plain that plaintiff made the showing necessary to confirm an ex parte attachment order (*see* CPLR 6212 [a]) by establishing that it had a cause of action against defendants, who are nondomiciliaries residing outside the state (*see* CPLR 6201 [1]), that there was a high probability it would succeed on

the merits, and that the amount it was owed by defendants exceeded any counterclaim that defendants might have possessed. In addition, there was ample evidence that defendants were in a precarious financial condition that presented a real risk that they would be unable to satisfy a judgment against them.

The only point at issue here is whether the properties plaintiff sought to attach were subject to the court's authority, because "[i]n order to be subject to attachment, property must be within the court's jurisdiction" (*Matter of National Union Fire Ins. Co. of Pittsburgh, Pa. v Advanced Empl. Concepts*, 269 AD2d 101, 101 [2000]; *see* 30 NY Jur 2d, Creditors' Rights § 24). Defendants contend that their ownership interests in the various limited liability companies that plaintiff sought to attach were not located in this state and therefore could not properly be attached.

To analyze this issue, it is useful to review briefly the process and parameters of attachment. "Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment" (CPLR 6202). This includes "[a]lmost any interest the judgment debtor has in any kind of property, real or personal, tangible or intangible" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:9, at 67). For instance, "[p]rominent among the commercial sources of intangible interests is the judgment debtor's interest in a partnership" (Siegel, CPLR C5201:13, at 74). "The rule of thumb is that whatever the interest the debtor has is an interest the creditor can reach" (Siegel, CPLR C5201:10, at 68). Indeed, the debtor may own title but not have a right of possession, or, conversely, "may have the right to the possession of an asset for a time even if title belongs to someone else"; if that which the debtor possesses or owns has any kind of value that is capable of drawing a bidder at a sheriff's sale, it is leviable (*id.*).

Real property within this state may be attached simply by the sheriff's filing a notice of attachment with the clerk of the county in which the property is located, which serves the same function as a notice of pendency. Similarly, "[t]angible personal property obviously has a unique location and can only be attached where it is" (*see ABKCO Indus. v Apple Films*, 39 NY2d 670, 675 [1976]), so to attach tangible personal property, the sheriff may either physically take possession of the property or simply serve the order of attachment on the appropriate garnishee (Siegel, NY Prac § 320, at 510 [4th ed]), defined as a

"person . . . who has in [his] possession or custody [the] property in which the defendant has an interest" (NY Prac § 313, at 500).

Unlike tangible personal property, an intangible ownership interest may not physically exist at any particular location. Intangible ownership interests that are embodied in formal documents, such as negotiable instruments, may be considered to be located where the written instruments are physically present (*see ABKCO Indus.*, 39 NY2d at 675), and the situs of the shares of a corporation is either where the corporation exists or where the shareholders are domiciled (*see Sweeney, Cohn, Stahl & Vaccaro v Kane*, 6 AD3d 72, 79 [2004], *lv dismissed* 3 NY3d 751 [2004], citing *Matter of Enston*, 113 NY 174, 181 [1889]). But the question of how to pinpoint the location of an uncertificated ownership interest in a company is far less clear-cut. When it comes to a broad range of intangibles, "[t]he CPLR contains no provision as to the situs of [intangible] property for attachment purposes" (*ABKCO Indus.*, 39 NY2d at 675). In fact, it is frequently observed that determining the situs of such intangibles involves employing legal fictions (*see Severnoe Sec. Corp. v London & Lancashire Ins. Co.*, 255 NY 120, 123-124 [1931]; Kennedy, *Garnishment of Intangible Debts in New York*, 35 Yale LJ 689, 690 [1926]). Consequently, the definition in CPLR 5201 (c) (1) of the proper garnishee for such uncertificated ownership interests becomes central to determining the location of the asset. As Professor David Siegel has explained, "[f]inding the garnishee is just another way of finding the asset's 'situs': if the garnishee has a New York presence, the debtor's asset in the garnishee's hands *will* usually be found to have a New York situs, too" (Siegel, NY Prac § 491, at 835 [4th ed]).

The analysis that should be applied here is found in *Harris v Balk* (198 US 215, 222 [1905], *supra*). There, the U.S. Supreme Court permitted a Maryland plaintiff who had a money claim against an out-of-state individual to attach a debt concededly owed by a third party to that out-of-state individual, by serving an order of attachment on that third party when he happened to be present in Maryland temporarily. The Court explained that a debt may be attached when the garnishee is served within the state, regardless of whether the garnishee resides there or is only there temporarily. "The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as much bound to pay his debt in a foreign state when therein sued upon his obligation by his creditor, as he was in the state

where the debt was contracted," and "[i]t is nothing but the obligation to pay which is garnished or attached" (*id.* at 222-223).

By a parity of reasoning, service of an order of attachment in this state on the individual who is the appropriate garnishee of intangible assets owned by defendants must result in the successful attachment of those assets. That such attachable intangible assets relate to entities that were formed out of state and own out-of-state commercial properties need not render the debtors' ownership interests in those entities unattachable. Attachment of the debtors' intangible ownership interests is not the same as attaching the out-of-state commercial properties that are assets of those entities. Just as a debtor carries his debt when he enters another state, an individual deemed to be in possession of other individuals' uncertificated ownership interests in business entities carries those intangibles around with him, and they are attachable in this state when he is present here.

The majority offers the novel proposition that membership interests in limited liability companies should be treated as the equivalent of shares in a corporation, which are deemed to be situated either where the corporation operates or where its shareholders are domiciled. This has no support in law and merely substitutes a new legal fiction for that which has been employed in New York for decades. Therefore, I disagree with the majority's contention that the legal situs of intangible interests in out-of-state limited liability companies for attachment purposes can only be the out-of-state location where the entity was formed and where it operates. Rather, when it comes to attaching the intangible assets of defendants, we have consistently relied solely on the presence in the state, whether permanent or merely temporary, of the garnishee (*see* Siegel, NY Prac § 491, at 835 [4th ed]). Siegel's observation, quoted by the majority, that an intangible may be considered to have different situses in different contexts (Siegel, NY Prac § 487, at 826 [4th ed]) does not negate his recognition that "if the garnishee has a New York presence, the debtor's asset in the garnishee's hands will usually be found to have a New York situs, too" (NY Prac § 491, at 835).

The majority relies on *National Broadway Bank v Sampson* (179 NY 213 [1904]) for the proposition that the situs of an intangible res is the *domicile* of the debtor, so that the court cannot obtain jurisdiction over the res by service upon a nonres-

ident garnishee who was only temporarily present in this state. However, the restrictive approach to attachment of an intangible asset set out in *National Broadway Bank v Sampson* and advanced by the majority is contrary to the reasoning of and policy behind *Harris v Balk* (*supra*).

I would add only that, to the extent there is any perceived lack of certainty about whether an intangible may be treated as present in this state based upon the temporary presence of the appropriate garnishee of that intangible, the undisputed circumstances themselves weigh heavily in favor of permitting the attachment in this case. Plaintiff's entitlement to a money judgment against defendants is established, and any assets defendants possess should be made available for purposes of enforcement.

Indeed, the court's personal jurisdiction over defendants would have permitted the court to direct defendants to turn over the interest in out-of-state assets to a New York sheriff (*see Gryphon Dom. VI, LLC v APP Intl. Fin. Co., B.V.*, 41 AD3d 25, 31 [2007], *lv denied* 10 NY3d 705 [2008]). The remark in *Gryphon* that "it would violate the sovereignty of another state if a New York sheriff tried to attach property in another state" (*id.*) was clearly intended to apply to property that was tangible or otherwise physically present in the other state; it was not applicable to circumstances in which the New York court had personal jurisdiction over the defendants and where the order of attachment was directed at an assignable or transferable intangible ownership interest. In fact, *Gryphon* not only recognizes that a judgment creditor may enforce its judgment by a turnover order covering out-of-state property, but, in addition, it emphasizes that no distinction should be made between "debt" and "property" for purposes of the enforcement of judgments (*id.* at 36), which provides further support for the application of the reasoning of *Harris v Balk* (*supra*) to the attachment order we consider here.

Finally, as to the court's subsequent appointment of a receiver, "[u]pon motion of a judgment creditor . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment" (CPLR 5228 [a]; *see Matter of Chlopecki v Chlopecki*, 296 AD2d 640, 641 [2002]). In view of defendants' complete unwillingness to cooperate with plaintiff's effort to collect upon its judgment, the court was war-

ranted in appointing a receiver to "aid in post-judgment enforcement" (*Old Republic Natl. Tit. Ins. Co. v Cardinal Abstract Corp.*, 14 AD3d 678, 681 [2005]), and defendants cannot contend that the receiver appointed herein will not discharge his duties faithfully.

The other defenses interposed by individual defendants Guy T. Mitchell and Jennifer Falor were properly rejected by the motion court.

Accordingly, I would affirm.

LIPPMAN, P.J., and TOM, J., concur with ANDRIAS, J.; SAXE, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered February 8, 2008, reversed, on the law, without costs, plaintiff's motion to confirm the order of attachment denied and the ex parte order of attachment, same court, dated September 25, 2007, vacated. Order and supplemental order, same court, entered April 7, 2008, modified, on the law, the motion for the appointment of a receiver denied, the order and supplemental order vacated except the tenth decretal paragraph of the supplemental order which restrains defendants from disposing of or diverting their ownership and/or management interests in the entities designated in subsections (a), (b), (c), (d) and (e) of the first decretal paragraph in the supplemental order, and otherwise affirmed, without costs. Motion to enlarge record denied.