[Cite as *Wick v. Ach*, 2019-Ohio-2405.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHAD P. WICK, | : | APPEAL NO. C-180243 |
| | | TRIAL NO. A-1700400 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| ROGER W. ACH, II, | : | |
| CHICAGO WEST PULLMAN, LTD., | : | |
| SOCIALPOINT, INC., | : | |
| and | : | |
| OUR TOWN MEDIA, INC., | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 19, 2019

*Lindhorst & Dreidame* and *Barry F. Fagel*, for Plaintiff-Appellant,

*Strauss Troy Co., LPA,* and *Christopher R. McDowell*, for Defendants-Appellees.

BERGERON, Judge.

{¶1}   Stymied by his efforts to collect a judgment and convinced that the debtor was hiding assets in various corporations, the plaintiff-appellant here asks us to take a novel step under Ohio law and recognize a claim for "reverse piercing" of the corporate veil.  We declined that invitation a few years ago and decline it again today—Ohio simply does not recognize such a cause of action.  Creditors situated similarly to the plaintiff have an array of paths that they can pursue to secure satisfaction of their debts; breaking the new legal ground requested here is as unnecessary as it is unwise.  We accordingly affirm the judgment of the trial court dismissing the relevant claims in this appeal.

I.

{¶2}   This appeal originates with a 2009 money judgment that plaintiff Chad Wick obtained against defendant Roger Ach.  After apparently years of unsuccessful efforts to collect on that judgment, Mr. Wick initially filed a complaint in common pleas court in January 2017, amending it in March of 2017.  The amended complaint presents claims against Mr. Ach, the judgment debtor, and three companies, Chicago West Pullman, Ltd., SocialPoint, Inc., and Our Town Media, Inc., (collectively, the "Companies") all allegedly controlled by Mr. Ach in some capacity.

{¶3}   The amended complaint sought recovery on "reverse corporate veil piercing," fraud, unjust enrichment, and a creditor's bill theories. In response, Mr. Ach and the Companies moved to dismiss on Civ.R. 12(B)(6) grounds for failure to state a claim as well as under Civ.R. 9(B) (for failure to plead the fraud claim with particularity).  Ultimately, the trial court granted dismissal on all of the claims except the creditor's bill (which remains pending) and certified the judgment for immediate appeal under Civ.R. 54(B).  In granting the dismissal, the court noted that Ohio does not recognize reverse corporate veil piercing,

the fraud claim failed to meet the pleading standard for such claims, and Mr. Wick failed to demonstrate a benefit conferred on the defendants necessary to support the unjust-enrichment claim. From this dismissal Mr. Wick now appeals and presents three assignments of error, all of which challenge the trial court's dismissal of his various causes of action.

## II.

{¶4} On appeal, we review a motion to dismiss on Civ.R. 12(B)(6) grounds de novo. *Burchard v. Ashland Cty. Bd. of Dev. Disabilities*, 5th Dist. Ashland No. 17-COA-041, 2018-Ohio-4408, ¶ 19 ("Our standard of review on a Civil Rule 12(B) motion to dismiss is de novo."). Dismissing a complaint under Civ.R. 12(B)(6) tests the sufficiency of the complaint, and we construe the allegations in a light most favorable to the plaintiff. *Id.*

## A.

{¶5} First, appreciating that no court in Ohio has adopted reverse corporate veil piercing, Mr. Wick implores this court to take that step here. Unlike a traditional piercing-the-corporate-veil scenario, where a corporation deemed an alter ego of an individual renders the individual liable for the debts of the corporation, reverse corporate veil piercing imposes liability on a corporation for an individual's debts. *Mathias v. Rosser*, 10th Dist. Franklin Nos. 01AP-768 and 01AP-770, 2002-Ohio-2772, ¶ 34. Reverse corporate veil piercing, however, has not been adopted in Ohio and was specifically rejected by this court only a few years ago. *Gershuny v. Gershuny*, 1st Dist. Hamilton No. C-140482, 2015-Ohio-4454, ¶ 14. As we explained in *Gershuny*, reverse piercing "allows a judgment creditor to bypass the normal judgment collection procedure of attaching the judgment to the debtor's shares in the corporation, and instead attach the corporate assets directly." *Id.* Such a shortcut thus places the creditor in a better position than the shareholder herself. After

surveying the extant caselaw, we observed that "Ohio is not one of the few jurisdictions that have adopted the [reverse piercing] doctrine * * * [and] [w]e decline to adopt this theory here." *Id.*

{¶6}  Although Mr. Wick entreats us to distinguish *Gershuny*, we could not embrace his reverse piercing cause of action without overruling that precedent.  We decline to take such a step, particularly when nothing in the caselaw suggests that reverse piercing is winning any more adherents.  Indeed, adoption of reverse piercing raises a variety of policy-related concerns. For example, courts acknowledge that these types of creditor claims can be dealt with through other available remedies.  *See, e.g., Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557, 1577 (10th Cir.1990)  ("more traditional theories of conversion, fraudulent conveyance of assets, respondeat superior and agency law are adequate to deal with situations where one seeks to recover from a corporation for the wrongful conduct committed by a controlling stockholder").  As one of our sister state courts explained:

> Judgment collection procedures offer judgment creditors adequate protection in situations where outside reverse piercing would not harm innocent shareholders and creditors, legal remedies are inadequate, and the traditional requirements of proving alter ego are met.  By levying on the debtor's shares, the judgment creditor could place itself in the same position as the shareholder.

*Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal.App.4th 1510, 1524, 77 Cal.Rptr.3d 96 (Cal.App.2008).  Additionally, the adoption of this theory raises negative implications for the stability of the corporate form, including jeopardizing the rights of third-parties that do business with the corporation.  *See Floyd v. I.R.S.,* 151 F.3d 1295, 1299 (1oth Cir.1998)

(rejecting the theory under Kansas law and noting that it would "unsettle the expectations of corporate creditors who understand their loans to be secured * * * by corporate assets").

{¶7} These points certainly resonate here. Mr. Wick has at his disposal the pending creditor's bill claim that he is free to pursue before the trial court, and we see no indication that he has attempted to foreclose on Mr. Ach's shares in the Companies. If Mr. Ach actually owns shares in the Companies, those shares would be assets like any other asset possessed by a judgment debtor. Similarly, to the extent that Mr. Wick believes fraudulent transfers are afoot, he would have conventional fraudulent-transfer remedies in his arsenal. In short, Mr. Wick has the benefit of various potential remedies to chase a debtor allegedly engaged in a corporate shell game.

{¶8} On the other side of the ledger, the jurisdictions that recognize the reverse piercing theory often seem to rely on the superficial similarity between reverse-veil-piercing and traditional veil-piercing doctrines. *See, e.g., Sweeney, Cohn, Stahl & Vaccaro v. Kane,* 6 A.D.3d 72, 76, 773 N.Y.S.2d 420 (N.Y.App.2004), *leave to appeal dismissed,* 3 N.Y.3d 751, 788 N.Y.S.2d 661, 821 N.E.2d 965 (2004) (applying Florida law) ("[i]n both situations there is a disregard of the corporate form, and the controlling shareholders are treated as alter egos of the corporation and vice versa."). This analysis often prompts the conclusion that "there is no logical basis upon which to distinguish between a traditional veil piercing action and an outsider reverse piercing action." *C.F. Trust, Inc. v. First Flight L.P.,* 266 Va. 3, 580 S.E.2d 806, 810 (2003). But this conclusion downplays the ways in which reverse veil piercing is distinguishable from traditional veil piercing, principally the potential harm inherent to both innocent shareholders and corporate creditors by allowing judgment creditors to bypass normal collection processes and jump to the front of the collection line. *See Postal Instant* at 1513; *Floyd* at 1299 (recognizing reverse piercing "will reduce the

effectiveness of the corporate form as a means of raising credit" because of the "increased risk of default posed by outside reverse-piercing claims").

{¶9} Furthermore, even in the jurisdictions that have adopted reverse corporate veil piercing, the courts do so only in specific and limited circumstances, which generally involve an absence of other remedies. *See, e.g., Tisch v. Tisch*, 439 P.3d 89, ¶ 27-30 (Colo. App.2019) (recognizing claim when no other remedies were available and no innocent shareholders would be harmed); *C.F. Trust, Inc.* at 13 (The court "must weigh the impact of such action on innocent investors" and "consider the availability of other remedies the creditor may pursue." ); *LFC Marketing Group, Inc. v. Loomis*, 116 Nev. 896, 904, 8 P.3d 841 (2000) ("reverse piercing is appropriate in those limited instances where the particular facts and equities * * * require that the corporate fiction be ignored so that justice may be promoted."). Without delving into all of the remedial options in those states, we are comfortable that Ohio provides judgment creditors in Mr. Wick's position adequate remedies to pursue wayward debtors without the need for creating a new cause of action.

{¶10} Against this backdrop, we see no reason to disturb our recent decision in *Gershuny*. Mr. Wick's standing as a judgment creditor provides him with adequate legal remedies to collect on the debt, and he can pursue those avenues. The trial court accordingly did not err by dismissing the reverse-piercing claims.

### B.

{¶11} Next, Mr. Wick contests the dismissal of his fraud claim. Initially we note that fraud pleadings have heightened particularity requirements grounded in Civ.R. 9(B). The party alleging the fraud must include the time, place, and content of the false misrepresentation, the misrepresented facts, the identity of the person giving the false information, and the nature of what was obtained or given in connection with the fraud.

Civ.R. 9(B). *See Advanced Prod. Ctr., Inc. v. Emco Maier Corp.*, 5th Dist. Delaware No. 2003CAE03020, 2003-Ohio-6206, ¶ 15 ("The circumstances constituting fraud include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud.").

{¶12} In addition to the particularity requirements, a party must also plead all the elements of a fraud claim; a failure to specifically plead the operative facts that form the basis of a fraud claim renders the claim defective. *Rieger v. Podeweltz*, 2d Dist. Montgomery No. 23520, 2010-Ohio-2509, ¶ 9 ("The 'particularity' requirement of Civ.R. 9(B) means that the pleading must contain allegations of fact which tend to show each and every element of a cause of action for fraud."). This requires, among other things, a showing of justifiable reliance on the alleged fraudulent statement to the alleging party's detriment. *Sutton Funding, L.L.C. v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574, ¶ 49 (2d Dist.).

{¶13} In light of the foregoing considerations, Mr. Wick's fraud claim fails for a variety of reasons. The core fraud allegations appear in paragraphs 47-50 of the amended complaint. We start with an obvious problem—most of the fraud claim is premised on alleged statements that an unnamed "agent" of Chicago West Pullman, Ltd., wrote in letters to Mr. Wick's former counsel. Because we do not know the identity of this "agent," these allegations fail to satisfy particularity. Perhaps more significantly, Mr. Wick never identifies any communications from SocialPoint, Inc., or Our Town Media, Inc., the other two corporate defendants. Instead, he simply states "the other Company defendants here are owned and managed by [Chicago West Pullman, Ltd.]." But this creates a fatal gap in the claim—just because one entity owns another does not mean that a statement by the former

is attributable to the latter. Other allegations in the complaint are similarly opaque—one utilizes passive voice to note "Plaintiff was informed," but this again hides the speaker of the alleged communication. Therefore, the amended complaint fails to withstand a particularity review.

{¶14} Closer scrutiny of the allegations reveals other flaws. The alleged statements conveyed that: (1) Mr. Ach was not affiliated with Chicago West Pullman; (2) Chicago West Pullman owed Mr. Ach no compensation; (3) Mr. Ach did not work for or receive compensation from the other Companies; and (4) Mr. Ach has created an "illusion" of wealth but is not, in fact, wealthy. But Mr. Wick failed to plead any facts to show that he actually relied on these statements to his detriment. At best, his complaint indicates that he suspected the alleged statements to be false (because they conflicted with other evidence at his disposal), but makes no indication of reasonable reliance on them, which precludes the fraud claim. *See McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶ 65 ("Even when [the plaintiff-appellant's] allegations are construed in a manner most favorable to him, they would only support the inference that he believed the statements were false, and thus did not base any of his subsequent acts upon them."). Suffice it to say, these fraud allegations suffer from myriad problems, and we have no hesitation in upholding the trial court's dismissal of them.

C.

{¶15} Finally, that brings us to the unjust-enrichment claim. The crux of this claim is that the Companies were unjustly enriched "by, among other things, keeping money that properly belongs to Mr. Wick." A claim for unjust enrichment, however, requires a showing that "(1) a benefit [was] conferred by the plaintiff on the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under

circumstances where it would be unjust to do so without payment." *Alexander v. Motorists Mut. Ins. Co.*, 1st Dist. Hamilton No. C-110836, 2012-Ohio-3911, ¶ 23. Thus, to successfully plead the elements of this claim, Mr. Wick must establish that he conferred a benefit on the Companies. *See Lehigh Gas-Ohio, L.L.C. v. Cincy Oil Queen City, L.L.C.,* 2016-Ohio-4611, 66 N.E.3d 1226, ¶ 19 (1st Dist.) (plaintiff conferred benefit to defendant via $300,000 payment); *Clapp v. Mueller Elec. Co.*, 162 Ohio App.3d 810, 2005-Ohio-4410, 835 N.E.2d 757, ¶ 44-45 (8th Dist.) (appellee's labor on behalf of appellant could be construed to confer a benefit for purposes of unjust-enrichment claim). Simply pleading, as Mr. Wick did here, that the other party was unjustly enriched by keeping money that "properly belongs" to him leaves too much to the imagination. An unjust-enrichment claim is not meant to merely be another avenue to collect a debt—rather, it is an equitable remedy that arises in specific circumstances. Absent an indication in the pleading of the benefit conferred, Mr. Wick's claim was properly dismissed.

## III.

{¶16} As we find no error in the trial court's dismissal of Mr. Wick's claims, the first, second, and third assignments of error are overruled. We accordingly affirm the trial court's judgment.

Judgment affirmed.

**MOCK, P. J.,** and **WINKLER, J.,** concur.

Please note:
The court has recorded its entry on the date of the release of this opinion.